Two notes before we begin today, and we'll begin briefly. First is Judge Brasher and I wanted to send a big thank you to our colleague, Judge Ed Karnes, for agreeing to sit with us this week. As a wise colleague of mine used to say, the senior judges essentially work for free. They get paid no matter if they do a lot of work or very little work, and we're very appreciative that Judge Karnes has chosen to do a lot of work with us this week. Or note that last week was the 30th year, or 30th anniversary of Judge Karnes' confirmation of this court. There's a lot that can be said about his contributions to the law, to this court, and to the country. In fact, there's been a whole law review series on it, so a lot can be said. But all I will say is that if there were a Mount Rushmore of this court, Judge Karnes would be on that Mount Rushmore. The second thing I want to note, as also a wise colleague used to say, about our traffic light system, regarding timing, that if you see the red light, it's not a suggestion. So when you see the red light, please conclude your remarks at that time. With that, we'll call our first case, United States v. Daniel Baker. Counsel. Good morning, and please record. I am Randy Morell. I represent Daniel Baker, and for about the next six weeks, I'm the Federal Public Defender for the Northern District of Florida. The precedent for our case is that Mr. Baker's posts were not true threats, and they amounted to constitutionally protected speech. I say that because Mr. Baker's posts were conditional. They were conditioned upon a successful, not just an attack, but a successful attack on Florida's capital, and involved a group that apparently didn't exist. So let me ask us the first part of that, which is the conditional part. So having read the two critical Facebook posts, the ones that were part of the charge here, in those Facebook posts, your client says that we've already been recruited. Don't RSVP. Just join us there. How is that conditional? Well, they're not going to do anything. I mean, yeah, he's recruited, but they're not going to do anything. Well, that's different than conditional. So not doing anything is another part of this, of whether this is a true threat, whether it can be reasonably seen as a true threat. But conditionally being there with your AK-47, which is what he says, I'm having trouble understanding how that's a condition. In other words, if such and such happens, I will be there with my AK. He doesn't really say that, does he? Well, he's taking steps. He's trying to recruit people. I mean, that's, you know... He says we've already, an army has already been recruited. Well, he's done the recruiting, and I suppose that's a step. But the point is... And we will be there, and join us there. Right? He's going to show up. But I mean, that's what it says. He's going to show up, and we've recruited. But again, this use of force, anything that would cause, generate fear, is only going to happen unless there's a successful attack on the Capitol. He's going to stand around, I suppose, unless there's a successful attack on the Capitol. Well, let me ask you this. If I am someone who is contemplating attacking the Capitol on that day, and I read a post which said, if I go there, someone is going to surround the Capitol, wait for me to be inside, and then kill me, as he has killed many Al Qaeda, or many other terrorists out in the Middle East, would that not discourage me from doing exactly what I want to do? Is it not reasonable for a protester to then react to that threat? There's an element to that. But remember, there are two parts to this. It's conditional, and the group doesn't exist. So, again, I would suggest it is... So, let's explore that part of it, the group doesn't exist. Because, as I understand it, there were articles in the record which suggested that there were fear of this. In fact, as I understand it, the second post, the one to the, I think the WCTV post, and you and I know what that is because we live in the Tallahassee area, that one indicated that there was fear by the FBI that people would attack the Capitol, the State Capitol. That was early on, and as time went by, it was apparent that there wasn't a threat. In fact, that was part of the evidence. The judge wouldn't let us get in that there wasn't a threat. And in terms of, did this group exist? Well, there were 50 U.S. or 50 State Capitals. None of them got attacked. The Florida Capitol had never been attacked. And the newspaper articles that we got in, not for substantive evidence, but the newspaper articles that we got in said that they'd been monitoring, the Sheriff's Department, the Police Department had been monitoring these potential threats, and there were none. They hadn't found any. Do you agree with me that whether the Capitol was, in fact, attacked or not is not dispositive of whether the threat was reasonable? In other words, if somebody sees the threat and says to themselves, well, I don't want to be in the Capitol because I don't want to get killed that day, and decides not to go, that is an indication of the truth, the reasonableness of the true threat, as much as it is that it was conditional or that it wasn't a real person, is it not? Well, I think you have to have a true and accurate picture of the circumstances. And, you know, we got into this with the trial court about what controlled it, whether it was what was known to the public at the time. And my position was, well, that's not really it. You have to have an accurate, a true picture of what the circumstances. You know, Brandeis said that there had to be reasonable grounds to fear serious evil before we could curtail speech. And if, in fact, there's no such group, I don't see how you can say there's reasonable grounds to fear serious evil. So in advance of oral argument, we sent you a case, Cooper, and then the government sent a supplemental letter adding some other cases to that. And those cases seem to indicate that it doesn't have to actually be a real person if there is a threat against a person. In other words, the mens rea element doesn't go to whether the threatening person knows that the person is real. Well, in about three minutes I can tell you why Cooper doesn't apply. When the facts are vastly different in Cooper, and it wasn't a prediction of something that was going to happen. Cooper said, I've got this fellow here and I'm going to kill him if you don't give me air time. So it wasn't a matter of predicting what was going to happen days or weeks ahead. And it was imminent. He claimed that we had that person there. But wasn't that, that person was completely made up. Here at least, you have January 6th, and we don't have to comment on any political part of that, but you have an attack on a Capitol on January 6th. And then you have the FBI stating that it's concerned about attacks in the run up to inauguration day on state capitals. And that's in the record. So how is that not different than Cooper? It wasn't, the threat of action was not as imminent. It didn't involve a prediction. They had the guy right there. But there's more than that. Of course, it wasn't subject to any First Amendment analysis. Nobody claimed that Cooper's phone calls were protected speech. And there are some cases I cited in the second part of my brief for cases that address this definition of person. Now, I think it's important to realize Cooper was prosecuted under Section 875B of the statute, which deals with extortion. And the court in Cooper said, and they stressed that, the purpose of this statute is to prevent extortion. Now, Subsection C, which Mr. Baker was convicted of, I would say the purpose of that is to prevent fear. So it's a different purpose. But the cases I cited dealt with 876, the companion statute. It reads exactly the same. Subsection A has to do with ransom. Subsection B has to do with extortion. Subsection C has to do with fear. And 4 has to do with reputation. But those cases define person for 876. The difference is 876 has to do with mail. But they define person. Mr. Merrill, let me ask you a question on condition. You're not saying that just because it's condition, that alone is enough to insulate it from prosecution? It's a factor. It's a factor. But, yeah, you're right. True threats, there's a case law that says true threats can be a condition. But it's a factor. And I think it weighs heavily in this case. Isn't, though, the question here what a, I mean, we're talking about an objective test. So isn't the question what a reasonable observer would have understood the threat to communicate? I think that's fair, sure. Okay. So, I mean, you could have some conditions that are so fanciful or farcical that a reasonable observer would say those conditions are never going to happen. And you could have some conditions where a reasonable observer could say, look, this condition is highly likely to occur. I see I'm out of time, but if I can answer your question. You may, counsel. Well, again, you've got to keep in mind, most of these cases are direct threats to an individual. And, realistically, it's hard for an individual to calculate the incapable of the person making the threat. Here, I would suggest it's a lot different. The fear, I suppose, is that somebody else is going to be injured. And I do think you have to think about why we have an exception for true threats. It's to protect people from fear, to protect people from the chaos that's going to make the possibility of violence. Well, to begin with, if these people don't exist, who are we protecting? Can I ask you to address this hypothetical? So, let's say I call in a bomb threat or I post on the Internet and I say, I'm going to shoot up an elementary school on Christmas Day. There's not going to be anybody there on Christmas Day. Everybody knows that. There won't be anybody at the elementary school. Is that a true threat? I think it certainly could be. Now, here again, you don't have the First Amendment. So, I guess, what's the difference? So, in that circumstance, no one's going to be at the school. It's similar, I think, here. I think it's closer. I mean, it's closer to our case. But, you know, the government side, they gave some supplemental authority. The guy said he was going to blow up the bank. Well, are there going to be people in the bank? Well, I guess it could be a Saturday, but there's a good chance there's going to be people in the bank. When you say I'm going to blow up a school on Saturday, is it possible there could be people in the school? Yes, it's certainly possible. So, to me, it's not that clear cut. It's not as if it's sort of a matter of probability. Is there a chance somebody's going to be there? But what I'm saying is this isn't probability. This group absolutely didn't exist. Judge Collins, anything else? Mr. Merrill, before you sit down, I understood us to have said in Martinez that the government had to prove that the defendant intended that his threat be perceived as a, quote, serious expression of an intention to inflict bodily harm. You're not backing off of that, are you? No, that's an objective test, and what we've been talking about is the objective test. Right. So you concede there's enough evidence for the jury to have found that he intended that? Yes, sir. We contested that at the trial, but was there enough evidence for the jury to reach that conclusion? Yes, sir. Okay. I just wanted to clarify that. Thank you. Thank you, counsel. Thank you. May it please the Court, my name is Brian House, and I represent AMICI, American Civil Liberties Union, ACLU of Florida, and the Cato Institute. High thresholds are necessary to constrain the exercise of prosecutorial discretion in the application of the criminal threat statutes. If the First Amendment standards are watered down, the statute's broad sweep would invest law enforcement officials with tremendous power to target disfavored political speech simply because it includes speculative, hyperbolic, or figurative references to violence. Here, Mr. Baker's statements do not meet the high constitutional bar for a true threat. This Court has said that a communication constitutes a threat when, in context, it would cause a reasonable person to fear that the speaker will act according to its tenor. As the Supreme Court held in Watts, conditional statements are much less likely to constitute true threats. Counsel, the problem is the context in Watts is very different. The context in Watts is a speech to a large group that's laughing at what everyone understood at the time was perceived to be parody and a joke. I don't see any evidence at all that this was perceived subjectively or objectively by anybody to be in the context of a political speech, number one, and, number two, that this was seen as some sort of parody or a joke. Your Honor, I don't dispute that the context in Watts was different and that the audience in Watts understood the speaker to be talking figuratively. But here I would note that there is no evidence that anybody complained about Mr. Baker's Facebook posts. The only evidence we have is that the government saw fit to act on those posts. But as the Ninth Circuit held in Hanna, using law enforcement's reactions to threats is a bit like using a bloodhound to determine whether a reasonable person would pick up a scent. So the absence of any indication that the audience of Mr. Baker's Facebook posts felt threatened, I think, is a factor in Mr. Baker's favor. Can you address the hypothetical that I, you know, I ask Mr. Baker's counsel, which is, you know, let's say that I say I'm going to blow up a school on a day when no one's going to be there. Is that a true threat or is it not? I think it is potentially a true threat, Your Honor. And the question would be whether a reasonable person seeing that communication would assume that somebody could be at the school and could be hurt as a result of that person's actions. But I'll give a close counterexample, which comes from, I think it was the Missouri Court of Appeals in CGM. There, a 14-year-old said to a friend, if I get dynamite for my birthday, do you want to help me blow up the school? And the court held that that threat was, or that statement was not a true threat because the condition itself was implausible. But here, there's no if statement. I mean, this goes back to the first question I asked your brother at the table, which is there's no if this happens, then I will be there. It is we have recruited, an army is going to be there, join us, don't RSVP, and bring your guns. Your Honor, I agree that the statement join us and be there, you know, potentially with your guns was not conditional. But Mr. Baker said he predicted that the armed white supremacist militia would overtake the Capitol. And he said, let them fight with cops and take the building. Then we will encircle them and trap them inside. And again, in the post, he emphasized in all Capitol letters, do not help cops or the enemy. So I just want to be clear. So it's not a true threat for him and an army, his words, to be at the Capitol with their AK surrounding it, as long as the condition of them storming the Capitol to kill the people inside does not happen. The statement, you know, join me at the Capitol with your guns. Right. The Army could try to prosecute that under an incitement theory, although I think there would be imminence problems. But the statement itself is not a reference directly to violence against an individual person. It's just saying, show up with your guns. But when he's talking about violence, when he's talking about actually. But the context is not to show up with guns. It's to show up and to confront those who are going to, in his thoughts or words, storm the Capitol. The test the Supreme Court had laid out in black is whether a reasonable person would understand this. You have a serious intent to engage in violence against a person. So it's not just a serious intent to intimidate somebody, a serious intent to rally people to the Capitol. It has to be a serious expression of an intent to engage in violence. And the references to violence in Mr. Baker's post only happened if the militia successfully defeated law enforcement officers and overtook the Capitol. Call to arms is not a call for use of firearms. The statement in Brandenburg, for example, was essentially a call to arms that was not prosecuted as a threats case. That was prosecuted as incitement. So I think that those sorts of statements are rightfully treated under the incitement test. The picture at the bottom of people being held at bay with AK-47s? Again, those were related to the conditional nature of Mr. Baker's statements, which was if they overtake the Capitol, here's how we're going to respond. We're going to trap them inside. And because that condition itself was implausible, the statement did not rise to the level of a true threat. Okay. Anything else, Judge Brash or Judge Carnes? Thank you very much, Counsel. Thank you. Excuse me. May it please the Court. Tyler Lee for the United States. Daniel Baker was convicted of transmitting communications that were objectively threatening, threatening in context, and subjectively intended to be threats. And this Court should affirm his conviction. Baker's speech posts were objectively true threats and not protected speech. First, a conditional statement may still properly be a true threat, and this Court's decision in Callahan is instructive here. There, the defendant sent a letter to the Secret Service threatening to kill the President-elect if the Secret Service could help him carry out the act. And there, even though the Court found that that condition was unlikely to occur, it upheld that threat as a true threat, because Callahan demonstrated a readiness to carry out the threat, specified a date, time, and place to carry out the threat, and a willingness to accept the consequences of his actions. Can I get you to address something that bothers me about this case? Is that the way I understand the threat, and correct me if I'm wrong, but it seems like the condition in this case is if these people exist, we will attack them, right? Can that ever be a true threat if the threat is against someone that conditionally exists or does not exist? Yes, Your Honor. So there's no authority supporting Baker's position that the person who is threatened must actually exist. And to the contrary, the Sixth Circuit in United States v. Cooper upheld an extortionate threat conviction where the threatened hostage was not a real or actual person. And there are other cases upholding true threats to general groups of people where specific individuals are not identified. And that squares with the purpose of the true threat prohibition, which is not just to protect from the possibility that the threatened violence might occur, but to protect from fear. And so someone reading that threat at the time it's communicated may reasonably fear that someone is going to happen. I'm sorry, that someone is going to be harmed, regardless of whether that person exists, as long as they could reasonably fear that someone is going to be harmed. Well, and I guess that's the trouble I'm having is if the condition is if this person exists, I will attack them. Who would be reading the threat and be feeling the fear? Well, first, Your Honor, we would submit that Baker's statements were not expressly conditional in that way. He did not use if statements, but rather his posts proceeded almost on this assumption that the armed racist would be there. He's making these definitive statements. They are staging this armed coup. But with respect to who might potentially be threatened or who we would fear would be harmed in this circumstance, because Baker's characterization of these individuals as armed racists or Trump terrorists is, to some extent, subjective from his perspective, that actually creates more fear in this situation because it could encompass law enforcement, employees, or peaceful protesters who may be at the Capitol that day who might feel threatened. Counsel, let me come at this another way. Is there any evidence in the record to suggest that there were people who were threatening the Capitol on that day? In other words, that there are actual people who exist? Yes, Your Honor. What is that evidence in the record? And, again, looking at the context of how this all unfolded. Yes, Your Honor. So, for context, January 6th had occurred less than a week prior to Baker making his Facebook posts, and there were exhibits introduced both from the government and the defense that described the possibility of armed violence occurring at the Florida State Capitol that day. What was that evidence? Government Exhibit 27 was an Instagram post that was calling for an armed march on state capitals, and that had been circulating on social media as described by the agent who testified. It had been circulating in the days leading up to this event or to these posts. And Defense Exhibit 4, for example, the CNN article, which is actually linked in Baker's second post, describes extremists and Trump supporters who were calling for violence ahead of Inauguration Day. At state capitals? I am not sure off the top of my head, Your Honor, whether it specifically mentions state capitals, but I would also add that Defense Exhibit 1, the news article, although it stated that local law enforcement were not aware of specific threats to the Capitol, it nonetheless stated that law enforcement was girding for the possibility of violence. And so a reasonable person in context, looking at all these news articles, this publicly available information, could reasonably think that there would be people at the Capitol that day and there could be a possibility of conflict. What do we do with the fact, this is a similar issue but maybe slightly different, that there is no identifiable victim? So it just seems, you know, when you're thinking about a true threat, you're thinking about someone who would be put in apprehension. And the pre-sentence report says, we don't know of anyone that was put in apprehension of this. We don't know of anyone that read it. We can't identify any victim of this crime. Can a true threat, can it be a victimless crime? There doesn't need to be an identifiable victim, Your Honor. And that's because a true threat is a statement that's made under circumstances that would place a reasonable person in fear of themselves being kidnapped or injured, but it can also be a statement that would place a reasonable person in fear of others being kidnapped or injured. So there doesn't need to be an identifiable person who personally feels threatened, so long as the reasonable person could fear that others would be threatened. Well, I mean, but who is... So in the case from the Sixth Circuit, the radio station is the victim, right? Even though the threat is as to a different person, the radio station is being extorted. There's a true threat against someone else, and the radio station is being extorted. Here, the PSR says that there is no victim. There is no identifiable victim at all. So is the position, is your position that if the government learns of something that someone else has said, then that is sufficient to prosecute them for making a true threat? Yes, Your Honor, if a reasonable person, if a jury, again, could find that a reasonable person would fear that someone would be placed in harm. So let's just say that I tell you, like over lunch one day, that I want to kill the president. That's enough to be prosecuted, even if I'm not disseminating that to anyone else. You personally don't view it as a true threat, as long as an objective, reasonable observer who had heard it at the time could perceive it as a true threat. That means, is that the test? Yes, Your Honor, it's possible. And courts have held, I believe, that the threat does not need to be communicated directly to the alleged victim. Right, yeah, it has to be communicated to someone. And your position is that that someone can just be the government, right? Possibly, Your Honor, yes. There's another problem with that hypothetical, which is that there has to be a subjective component to this, right? Of course. In other words, it can't be just a joke subjectively. It has to be, that person has to believe that they are going to do that. And then the question is whether that is perceived as an objectively real threat, correct? Yes, Your Honor, correct. All right. I mean, so that— I would note for the record here that Baker is not contesting his subjective intent, only the objective component. Right, he wanted to do this. Yes. Right. Correct. What do you say about the ACLU's argument that you're sort of erasing the line between a true threat and incitement? That when I, you know, when I post something and say I want a mob to come and do mob-like things on the streets of Tallahassee, that that's a straight-up incitement issue and not a true threat issue? And that the problem here is that you're trying to prosecute someone for inciting speech under the auspices of a threatening speech? Well, Your Honor, incitement and true threats are separate categories of unprotected speech that are distinguished mainly on who is the target or the recipient of that speech, you know, a third party that you are making this advocacy towards versus an expression of your own intent to threaten someone else. But the Tenth Circuit in United States v. Wheeler observed that especially in cyberspace, the line between threats and incitement is not as clear as the defendant contends, and those categories of unprotected speech may not be completely distinct. And while the defendant's speech there may at first blush appear to be closer to incitement, it fits squarely within the rationale for excluding true threats from First Amendment protection. And so— In other words, it can be both, right? It can be both, Your Honor, or it can be one or the other. Courts have recognized that speech may be a true threat regardless of whether or not it satisfies the Brandenburg test. In your view, what would have to come out? So I've read these postings a couple of times. What would have to be deleted from those postings to make it only incitement and not a potential true threat? I'm not so sure it's a question of what would need to be deleted, but I think it's the use of the we statements that do a lot of work here because those statements can be read both to show potentially Baker's intent to advocate for others to join his cause, but at the same time, those we statements are first-person statements. They're statements of Baker's own intent to carry out these violent acts and to make these threats. So are you saying, and correct me if I'm wrong, but are you saying that if he had said, you need to go to the Capitol, you need to get guns, you need to encircle people and trap them in the Capitol, that that would be purely incitement and not a true threat? It's possible that a jury might still find under the circumstances that it would be a true threat, but I would agree that that would certainly fall more within the realm of incitement. This isn't a situation where Baker was standing back and saying to others, you should go do this, you should do this. He was explicitly including himself in these messages and expressing his own intent to carry out these threats. Yeah. So, I mean, what do you suppose... I'm sorry. Go ahead, Judge Kosh, please. Excuse me. Suppose he said everything he said, but there was no reference to guns, no reference to caliber, no reference to AKs, no reference to any firearms, would that have been a true threat? Yes, Your Honor. The jury could still have properly found a true threat because as they were instructed here, the statement can be a true threat so long as it would place a reasonable person in fear of someone being kidnapped or injured. And so here, Baker's statements about trapping people inside the Capitol could be understood to be kidnapping and therefore still probably a true threat. Let me ask you another question about a different issue. For a conditional threat to be a true threat, there has to be some possibility in the person who hears it mind, the reasonable, objective person, that a condition will occur, don't they? It's one factor for the jury to consider, Your Honor, but it's not necessarily dispositive. So if no reasonable person would believe that condition would occur and therefore no reasonable person would believe that there would be any violence, that still can be a true threat in your mind? Not if no reasonable person would think it necessarily, but again, I would return this Court's attention to the decision in Callahan where the defendant asked for a secret condition, his threat on secret service aid, and I would note that that condition in Callahan, the idea that the secret service would help this defendant assassinate the president-elect, seems far more unlikely to actually occur than the possibility of violence at a State Capitol on Inauguration Day just a few weeks ago. Yeah, and I think that holding is absurd. Let me ask you this. The guy says, well, we're going to do this. We're going to go ahead and slaughter innocent people, but only if the sun doesn't come up tomorrow. So keep your windows open, and if there's not sun out now, let's say you're in Arizona. If no sun come up tomorrow, meet me and we'll slaughter some innocent people. Is that a true threat? So, Your Honor, that statement first is expressed, I would distinguish it on the grounds that it's expressed. I know you're going to cite the hypothetical, but don't. Again, Your Honor, it would depend. While it is a much more unlikely conditional requirement, I think the reason why it's hard to say is because this question of whether defendant statements are true threats is a question for the jury, and so they would have to look at this with all the context and circumstances accompanying that statement. How could any rational person think the sun's not going to come up tomorrow or care if they thought it wasn't going to? They wouldn't. If they thought the sun wasn't going to come up, it was going to flame out, eight and a half minutes, it would be at the earth. They're not going to care whether somebody's issued a true threat or not. So what I'm suggesting to you is there has to be some possibility that the threat will be carried out, some reasonable degree of possibility. Whether it's a probability or not, I don't know. That's what I'm asking. It can't be an impossible condition. I would agree with that, Your Honor, but I would note that there have been cases such as where true threats happen in very unlikely conditionals, for example, threats from prisoners who are incarcerated or certainly don't have the present ability to carry out that threat that courts have still upheld as true threats. Counsel, you don't have to stake out the position you're staking out right here in order to succeed, correct? Correct. All right. What's the position you could stake out without having to take this position and still prevail or still advocate for affirmance here? I'm sorry. I'm not sure that I could. What evidence is there on the record that this wasn't the sun not coming up but the kind of condition that may possibly reasonably could happen? Yes, Your Honor. So as discussed before, there was evidence in the record that someone might think it would be likely. May I continue? Yes. Sorry. That it would be likely for there to be people at the Capitol and for the possibility of conflict that day. And Baker's statements demonstrate the same factors in Callahan where the court found that the threat itself was not conditional, showing a readiness to carry out these actions. He included specific details about how he was going to carry out his threat, the directions that they were going to take. He further specified a date and a time and a place, the call to arms on January 20th at the Florida State Capitol. And he manifested a willingness to accept the consequences of his actions by ending his post with, if you are afraid to die fighting the enemy, then stay in bed and wait. Let me ask you one last question. Yes. Can we, so if we adopt the following rule, are you satisfied with this rule, I guess, is the question. So we've talked about conditional statements. We've talked about whether the victims actually exist or not. If we just say, look, the question in a true threat case is, can a reasonable observer believe that the condition will come true? Can a reasonable observer believe that the victim exists? And that's always the question, what a reasonable observer of the threat would believe. Is that a rule that satisfies you for this case and other cases? Yes, Your Honor. And that's actually how the jury was instructed here, that a serious threat is one made under circumstances that would place a reasonable person in fear of another person being kidnapped or injured. Thank you, counsel. Thank you. I would say there's a reasonable possibility only if the group exists. And, you know, one of the things we did not get in, I mentioned this earlier, was evidence that tended to show the group did not exist. So here we are talking about the possibility that the, whether or not the group existed, and some of the critical evidence was kept out by the judge. We had the sheriff and the police chief both willing to testify that, look, we've monitored the situation and we can't find any threats. How can that be reasonable, though, as to that issue? How can someone understand that testimony to be reasonable if it was never communicated to anybody outside of the mental impressions of the chief and the sheriff? Well, I don't think it's limited to what the public knew, by the way. You can't have it both ways, it would seem to me. I mean, if Judge Brasher is right, and I think he is, about what the test is, and I think you would agree that that is a fair statement of the test, I think. I don't want to speak for you. But if that's a fair statement of the test, then it has to be information that a reasonable observer would have had communicated at the time if we're focused on context, right? Well, Brandeis said, you know, men feared witches and they burned women. There was a time men believed there were witches. I think you have to have an accurate picture. Witches didn't exist, so that didn't justify it. There are races that exist, so I don't think it's a true threat. I would like to come back real quick to Cooper and the definition of person. Those cases I cited talked about whether a corporation or an entity could be a person, and three of the cases said no, a corporation can't be, because it has to be someone that has a sense of personal safety. This group doesn't exist if there is no such person. I mean, is your argument on this point that there has to be an identifiable victim to a true threat? I mean, is that your point really? I think there has to be a pretty good chance there's a victim. Okay. Well, that's, I mean, so I guess I'll just give, for the purposes of this question, I'll just concede that there was no group that was organizing to do this. So you get that. But isn't the issue whether a reasonable observer of the threat could believe or would believe that this group existed? I think you have to have a reasonable belief. Yeah, so it's reasonable. So, I mean, once again, I concede that the people don't actually exist, but then that doesn't seem like it gets you the whole way to where you want to go. You have to say that a reasonable person would have known that they didn't exist or would have believed that they didn't exist. No, I mean, I think a reasonable person would have to have some reason to believe the group existed, and it seems pretty far-fetched that there's a group of people ready to attack the Florida Capitol and to do so successfully. The Florida Capitol has never been attacked. We never, we didn't have any state capitol that was attacked during this period of time. Counsel, couldn't you have said the same thing about the United States Capitol before January 6th? If somebody had threatened to storm the United States Capitol and beat the guards, take over, would you have thought that would be a true threat? Under your argument, I don't see how you would. Well, clearly that was a true threat, and it was a pretty unlikely one. But we had more than that. We had some intelligence. We had newspaper articles that said it was unlikely such a group existed. The intelligence wasn't communicated to your proverbial reasonable observer, I don't think, at least not to all of them. No, what I'm saying is I think you have to have a true picture of the threat, and if a man unreasonably believed that witches existed, that's not good enough. You have to have a true picture. Thank you, Counsel. Thank you.